UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MARSHALL C. GREENE,

Plaintiffs,

v.

CHARLES DANIELS, *et al.*,

Defendants.

Case No. 2:23-cv-00739-MMD-EJY

ORDER

## I.   SUMMARY

Pro se Plaintiff Marshall Greene, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), brings this action for violation of his Eighth Amendment rights under 42 U.S.C. § 1983 arising from prison conditions when he was incarcerated at Southern Desert Correctional Center ("SDCC") during the COVID-19 pandemic. (ECF No. 4 ("Complaint").) Following screening of Greene's Complaint (ECF No. 3), the Court permitted Green to proceed on his Eighth Amendment claims for unsafe prison conditions against Defendants Daniels, Hutchins, Picket, Scally, McCoy and Crumbwell. Before the Court are Defendants' motion for summary judgment (ECF No. 35 ("Motion"))[1] and Greene's motion for declaration of summary judgment (ECF No. 41 ("Cross Motion")).[2] For the reasons discussed below, the Court grants Defendants' Motion. Accordingly, the Court denies Greene's Cross Motion and motions for preliminary relief (ECF Nos. 49, 50) as moot.

///

///

---

[1]Greene responded (ECF No. 43) and Defendants replied (ECF No. 47).

[2]Defendants responded (ECF No. 42) and Greene did not reply.

## II.    BACKGROUND[3]

### A.    COVID-19 Guidelines and Safety Measures

On March 23, 2020, the Center for Disease Control and Prevention (CDC) issued guidelines for COVID-19 titled "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities." (ECF Nos. 35 at 2; 43 at 4-5.) The guidelines contained various recommendations for correctional facilities attempting to manage COVID-19 among its inmate populations and recognized that the recommendations may need to be adapted based on the individual facilities' needs. (*Id.*)

The NDOC Medical Director, Dr. Michael Minev, was tasked with implementing the medical and policy directives for the NDOC in 2020, including those addressing the new COVID-19 pandemic. (ECF No. 35 at 3-4.) Dr. Minev relied on CDC guidance in formulating these policies, but as the CDC guidelines recognized, not all the recommendations could be implemented at all facilities due to the limitations of individual facilities. (*Id.*) SDCC implemented the NDOC policies intended to mitigate the spread of COVID-19 that remained in place throughout 2020 and 2021, with some modifications. (*Id.* at 4-5.) The policies included allowing inmates access to masks and hand sanitizer; placing symptomatic inmates into isolation; and providing inmates with hand soap and other personal cleaning supplies. (*Id.* at 4.) Additionally, SDCC staff who tested positive were not to report to work; employees were to test every five days and were screened for symptoms daily; and if a staff member tested positive for COVID-19, all potential exposed individuals were required to quarantine. (*Id.* at 4-5.)

The CDC reported the first recognized COVID-19 cases in December 2019 in Wuhan, China. On January 20, 2020, the CDC reported the first case in the United States, in the state of Washington. (*Id.* at 5.) On March 13, 2020, the federal government declared a nationwide emergency due to the spread of the COVID-19 virus and two days later states began to implement shutdown measures. (ECF No. 35-6 at 9.)

---

[3]The following facts are undisputed unless otherwise noted.

**B.    Greene's Medical and Grievance History**

Greene's medical records show that he sought medical care on March 2, 2020,[4] with a fever of 102.7 degrees and complaints of "feverish sweats, body aches, productive coughing with greenish sputum headaches, nasal congestion, runny nose, dizziness." (ECF No. 38-1 at 186.) He remained in the infirmary for at least three more days and received daily wellness checks during which his vitals and temperature were taken. (*Id.* at 40-41.) Over the following months, Greene was administered COVID-19 tests that yielded negative results in June 2020, August 2020, October 2020, November 2020, December 2020, May 2021, July 2021, August 2021, October 2021, and November 2021. (*Id.* at 51-58, 86.) In February 2020, Greene declined an opportunity to take a COVID-19 vaccine. (*Id.* at 159.)

On January 18, 2022, Greene initiated a grievance process (Grievance No. 2006-31-34268) by filing an informal grievance asserting several issues. (ECF No. 35-12 at 2-3.) His informal grievance stated that the NDOC and SDCC were negligent in "screening its employees [and] has allowed this corona virus into its facilities," and complained that he was being denied access to hot meals, mail pick-up and mailroom, law library, medical treatment, hygiene toiletries, fresh air and sunlight, dental supplies, proper ventilation, sanitation products, and phone calls. (*Id.*) The grievance also complained that the food served "comes in the temperature danger zone daily" and that he had to choose between showering or using the phone. (*Id.* at 3.) This informal grievance also claimed that he was being "locked up illegally" as there was a contract that was "breached [and] compromised." (*Id.*)

Greene's informal level grievance was rejected on February 15, 2022. (*Id.* at 6.) The accompanying Improper Grievance Memo explained that the "inclusion of **more than**

---

[4]Greene's Complaint alleges that he contracted COVID-19 in January 2020 and remained in the infirmary for over five days with a fever of over 104 degrees. (ECF No. 4 at 5.) The parties now agree that there is no record that Greene went to the infirmary in January 2020. (ECF Nos. 35 at 5; 43 at 19.) Greene further claims that at this time, he had "cold-flu-like symptoms, but they were not severe." (ECF No. 43 at 19.)

**one grievance issue**, per form will be cause for the grievance to not be accepted" and advised Greene to resubmit a new informal grievance stating his issue within five days. (*Id.* (emphasis in original).)

On February 27, 2022, Greene again submitted an informal grievance under the same grievance number that grieved multiple issues, including the NDOC and SDCC's negligence in screening its employees for COVID-19, his incarceration against his will, and a demand to be put under house arrest. (*Id.* at 8-9.) This second informal grievance was rejected again, stating that only inmate claims "arising out of, or relating, to issues within authority and control of the Department may be submitted for review and resolution." (*Id.* at 25.)

On May 13, 2022, Greene submitted a first level grievance. (*Id.* at 23.) On August 18, 2022, he was notified that he could not proceed to a first level grievance because his informal level grievance had not been accepted. (*Id.* at 27.) He was informed that he could resubmit an informal level grievance within 5 days and advised that he should contact his caseworker for assistance. (*Id.*)

On August 25, 2022, Greene filed a second level grievance, though his other grievances had not been accepted. (*Id.* t 30.) This was again rejected on October 2, 2022. (*Id.* at 35.) The Improper Grievance Memo explained "you cannot disagree with a rejection and move to the next level. You must correct the deficiencies and resubmit for acceptance. You were given these instructions multiple times to which you refused to make such corrections." (*Id.* at 35.) The Improper Grievance Memo noted that no further actions could be taken. (*Id.*)

**C.    Greene's Claims**

Arising from this background, Greene filed his Complaint. (ECF No. 4.) The Court screened it under 28 U.S.C. § 1915A(a) and permitted Greene's Eighth Amendment claims alleging unsafe prison conditions to proceed against Defendants for failure to mitigate the spread of COVID-19. (ECF No. 3.)

4

## III.   DISCUSSION

Defendants move for summary judgment as to Greene's claims. *See* Fed. R. Civ. P. 56 (providing that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (a court must view all facts and draws all inferences in the light most favorable to the nonmoving party). Defendants assert that (1) Defendants were not deliberately indifferent; (2) no clearly established laws would have notified Defendants that they were in violation of the Constitution; (3) Greene failed to properly exhaust his administrative remedies under the Prison Reform Litigation Act (PLRA); (4) Greene's claims are barred by the statute of limitations; and (5) Greene cannot establish a causal connection showing that Defendants personally participated in creating policies to mitigate the spread of COVID-19. (ECF No. 35 at 9-25.) Because the Court finds that the issue of exhaustion is dispositive, the Court will address this argument and declines to address Defendants' remaining arguments.

Defendants argue, citing to Greene's grievance records, that Greene failed to exhaust available administrative remedies for his claims. (ECF No. 35 at 17-23.) Greene responded that he has "clearly exhausted all administrative remed[ies] available." (ECF No. 43 at 27.)  He further asserts that the "prison administration" "should be held to a higher standard to adhere to these processes, even more than those who use it." (*Id.*) He asserts without further explanation that the NDOC officials did not follow the time frame or time limits, citing Administrative Regulation ("AR") 740.08(12), 740.09(5) and 740.10(3). (*Id.*)

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d

5

1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). Administrative exhaustion is subject to a burden-shifting analysis. *See id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* Once a defendant demonstrates that a plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff to present evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). The ultimate burden of proof remains with the defendant. *See id.*

The PLRA requires *proper* exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) ("proper exhaustion" means "using all steps the agency holds out"). *See also Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (noting that to properly exhaust their administrative remedies, a plaintiff must adhere to critical procedural rules). This means that in general, prisoners must follow institutional grievance procedures. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock,* 549 U.S. 199, 218-19 (2007) (holding that prisoners could not be required to name in their grievance all defendants where the prison's grievance procedures did not require them to do so).

Moreover, a prisoner need only exhaust *available* administrative remedies. *See Ross v. Blake*, 578 U.S. 632, 742 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"). And a prison grievance need not contain all the elements or specificity of a future legal claim in order to satisfy the exhaustion requirement. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir.

2009) ("A grievance need not include legal terminology . . . unless . . . in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim."). This is because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.*

NDOC's AR 740 sets out the procedures for inmate grievances in its institutions and provides a tiered system of informal, first-level, and second-level review. (ECF No. 35-9.) Under AR 740.03(4), claims for which an inmate lacks standing—including due to the "inclusion of more than one grievance issue, per form"—will not be accepted. (*Id.* at 5.) In this event, the inmate may not appeal the decision to the next procedural level. (*Id.*)

Here, Defendants rely on Greene's grievance history and records of his submitted grievances to argue that Greene failed to exhaust his NDOC administrative remedies. The record shows that Greene initiated a grievance process (Grievance No. 2006-31-34268) on January 18, 2022, which was given a timely response on February 15, 2022.[5] Though the Improper Grievance Memo informed Greene that his grievance was rejected for grieving multiple issues and he could correct and resubmit his grievance within five days, Greene did not. Instead, he submitted a second informal grievance with the same deficiencies on February 27, 2022, and ignored instructions by filing first and second level grievances without approval. The Court thus finds that Defendants met their initial burden of proving that Greene failed to exhaust his available administrative remedies. *See Albino*, 747 F.3d at 1176.

///

///

///

///

---

[5]Even if Greene received the response to his informal grievance on February 25, 2022—the day he signed the notice—the response was still timely issued at 38 days from when he submitted his grievance. (*Id.*)

Even liberally construing Greene's pleadings[6] and response and viewing the evidence in the light most favorable to him,[7] the Court finds that Greene failed to show a genuine issue of fact that he exhausted administrative remedies or that NDOC's administrative remedies were effectively not available to him. In his Response, Greene cites to AR 740.08(12), which states that the "time limit for a response to the informal grievance is forty-five (45) calendar days from the date the grievance is received by the grievance coordinator to the date returned to the inmate." As discussed *supra*, Greene received a timely response to his informal grievance, but he failed to follow proper procedures and resubmit it, thus his grievance never escalated to the first and second levels. The Court reviewed the exhibits accompanying Greene's Response. Greene provides no additional grievance records, nor does he argue that there was something in his case that made the existing and generally available remedies unavailable to him. Accordingly, the Court finds that Defendants have met their burden in demonstrating that Greene failed to exhaust available administrative remedies, entitling them to summary judgment.

Therefore, the Court will grant Defendants' Motion based on Greene's failure to exhaust his available administrative remedies. Accordingly, the Court denies as moot Greene's Cross Motion, as well as his other pending motions for preliminary relief.

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

///

[6]*See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ("pro se pleadings are liberally construed, particularly where civil rights claims are involved.").

[7]*See Albino*, 747 F.3d at 1173 (citing *Anderson v. Liberty Lobby*, 747 U.S. 242, 247-250 (1986) and noting that on summary judgment, the court must "view all of the facts in the light most favorable to the non-moving party").

8

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 35) is granted.

It is further ordered that Greene's motion for declaration of summary judgment (ECF No. 41), motion for temporary restraining order (ECF No. 49), and motion for preliminary injunction (ECF No. 50) are denied as moot.

It is therefore ordered that the Clerk of the Court enter judgment in favor of Defendants and close this case.

DATED THIS 19th Day of February 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE